UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Menachem Raitport</u> and
<u>Crown Kosher Meat Market, Inc.</u>,
     Plaintiffs

     v.                       Case No. 09-cv-156-SM
                                  Opinion No. 2018 DNH 095
<u>Harbour Capital Corporation</u>,
     Defendant

## **O R D E R**

This proposed class action arises out of Harbour Capital's allegedly improper transmission of facsimile advertisements to Menachem Raitport and/or his business, Crown Kosher Meat Market (collectively, "Raitport"), in violation of the Telephone Consumer Protection Act and FCC regulations promulgated pursuant to that statute. By order dated September 12, 2013, the court stayed this action, pending completion of collateral administrative proceedings before the FCC likely to resolve critical questions of law underlying this litigation. <u>See</u> Order Imposing Stay (document no. 85). <u>See generally</u> Petitions, FCC Proceeding Nos. 02-278 and 05-338.

Those administrative proceedings have been completed and, accordingly, Raitport moves the court to lift the stay.

Raitport also seeks leave to file a brief addressing whether, under the Hobbs Act, this court has jurisdiction to follow a decision issued by the Court of Appeals for the D.C. Circuit arising out of the FCC administrative proceedings. He also seeks leave to amend his motion for class certification to add a third subclass of plaintiffs. Also pending before the court is Raitport's motion for class certification, which the parties have fully briefed.

For the reasons discussed, Raitport's motion to lift the stay (document no. 98) is granted in part, and denied in part. His motion for class certification (document no. 42) is denied.

**Background**

I.  <u>The Governing Statute and Regulations</u>.

The Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005 (collectively, the "TCPA"), prohibits the use of any device to send, to a telephone facsimile machine, an "unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The statute defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

The statute does, however, provide an exception to that general prohibition on unsolicited fax advertisements, if: (a) the sender has an established business relationship with the recipient; (b) the sender obtained the recipient's fax number through voluntary communication or a directory; and (c) the unsolicited fax includes an opt-out notice meeting certain statutory requirements. 47 U.S.C. § 227(b)(1)(C). In short, then, under certain circumstances a business may send an "unsolicited advertisement" by fax to a third party, but that fax must include the statutorily-mandated opt-out language. <u>See</u> <u>Id</u>. § 227(b)(2)(D) (providing that such opt-out language must be "clear and conspicuous" and "on the first page of the unsolicited advertisement," it must state that the recipient may opt out from future unsolicited advertisements, and must include a "cost free mechanism to send an opt-out request to the sender of the unsolicited advertisement).

In 2006, the FCC issued what has come to be known as the "Solicited Fax Rule." 47 C.F.R. § 64.1200(a)(4)(iv). That rule requires the sender of a facsimile advertisement to include the statutory opt-out language even when the fax is sent to a "recipient that has provided <u>prior express invitation or permission</u> to the sender." <u>Id</u>. (emphasis supplied). "In other words, the FCC's new rule mandates that senders of <u>solicited</u>

faxes comply with a statutory requirement that applies only to senders of <u>unsolicited</u> faxes." <u>Bais Yaakov of Spring Valley v. FCC</u>, 852 F.3d 1078, 1080 (D.C. Cir. 2017) (emphasis in original).  On its face, the Solicited Fax Rule would certainly seem to exceed the FCC's statutorily vested authority to regulate this area.  <u>See</u> 47 U.S.C. § 227(b)(2).  <u>See also</u> <u>Nack v. Walburg</u>, 715 F.3d 680, 682 (8th Cir. 2013) (noting that "it is questionable whether the regulation at issue [] properly could have been promulgated under the statutory section that authorizes a private cause of action.").  But, challenging the validity of that rule is, to say the least, difficult – in part because federal district courts lack jurisdiction to declare that rule invalid.[1]

Consequently, as the Court of Appeals for the Eighth Circuit recognized, even if the Solicited Fax Rule is plainly beyond the regulatory authority of the FCC, court's (including the courts of appeals) must enforce it as written, unless and until it is properly challenged in an appeal arising from agency

---

[1]     The Hobbs Act (also known as the Administrative Orders Review Act), 28 U.S.C. §§ 2341-2351, vests in the courts of appeals exclusive jurisdiction to review the validity of FCC regulations.  <u>Id.</u> § 2342(1).  That statute also establishes a short timeframe – typically, 60 days after issuance – within which to challenge such regulations.  <u>See</u> <u>Id.</u> § 2344.

action and deemed unenforceable by a court of competent

jurisdiction.

> The Administrative Orders Review Act ("Hobbs Act"), 28
> U.S.C. § 2342 et seq., precludes us from entertaining
> challenges to the regulation other than on appeals
> arising from agency proceedings (except arguably in
> extenuating circumstances not at issue in this case).
> Without addressing such challenges, we may not reject
> the FCC's plain-language interpretation of its own
> unambiguous regulation.

Nack v. Walburg, 715 F.3d 680, 682 (8th Cir. 2013).

Harbour Capital never filed a timely administrative

challenge to the Solicited Fax Rule with the FCC.  So, says

Raitport, this court's job is straightforward: unless and until

the Court of Appeals for the First Circuit (or the Supreme

Court) invalidates the Solicited Fax Rule in a proceeding

arising out of a proper administrative challenge to that rule,

this court is bound to apply the rule as written.  As discussed

below, application of the Solicited Fax Rule is critical to

Raitport's claims in this case.

II.  Plaintiffs' Claims.

According to the amended complaint (document no. 34),

beginning on May 5, 2005, Harbour Capital sent "well over ten-

thousand" unsolicited fax advertisements that failed to include

the opt-out language required by the TCPA.  Id. at paras. 15-16.

Then, more than a year later, beginning on August 1, 2006,

Harbour Capital again sent "well over 10,000" unsolicited and/or

solicited fax advertisements that failed to bear the required

opt-out language.  Id. at paras. 17-18.[2]

The two proposed subclasses of plaintiffs that Raitport

seeks to certify do not distinguish between "solicited" and

"unsolicited" faxes.  Instead, those subclasses include all

recipients of faxes sent by Harbour on or about two dates

(October 4, 2006 and November 7, 2006).  See Motion for Class

Certification (document no. 42) at 2.  No distinction is drawn

because, according to the Amended Complaint (citing both the

TCPA and the Solicited Fax Rule), all fax advertisements sent by

Harbour Capital - both solicited and unsolicited - were required

to contained opt-out language.  And, says Raitport, although

Harbour Capital's faxes did include opt-out language, that

language did not strictly comply with the statutory

requirements.

---

[2]     In his Memorandum in Support of Motion for Class
Certification (document no. 42-1), Raitport is more specific: he
asserts that Harbour (through an agent) transmitted 15,882 fax
advertisements on or about October 4, 2006, and an additional
13,838 fax advertisements on or about November 7, 2006.  Id. at
3.

For anyone who sends a fax advertisement that improperly omits the required opt-out language, the TCPA provides a private right of action and imposes statutory damages of $500 per fax (which can be trebled, if the court concludes the statutory violation was willful or knowing). 47 U.S.C. § 227(b)(3). So, based upon Raitport's allegations and the number of facsimile advertisements Harbour Capital reportedly sent, Harbour Capital faces potential class action damages of between roughly $15 and $45 million.

Raitport's assertion that all of the faxes sent by Harbour Capital were required to bear the statutorily mandated opt-out language is central to his claims. But, that assertion turns upon the continued enforceability of the FCC's Solicited Fax Rule. If that rule is invalid, there is a substantial problem with certifying either of Raitport's original proposed subclasses, since each would contain both individuals who received unsolicited faxes (which, under the TCPA, must have included the required opt-out language) as well as individuals who received solicited faxes (to which such a requirement would not apply). His proposal to add a third subclass faces obstacles as well.

**Discussion**

I.    The FCC's "Solicited Fax Rule" is Invalid.

Many courts have recognized the Solicited Fax Rule as being beyond the scope of the FCC's regulatory authority.  But, by virtue of the Hobbs Act, those such courts were nonetheless required to enforce the rule as written.  That, in turn, led to the certification of numerous class action lawsuits in which millions or even tens of millions of dollars ("bet the company" damages) were at issue.  See generally Creative Montessori Learning Centers v. Ashford Gear LLC, 662 F.3d 913, 915 (7th Cir. 2011).  Indeed, the requirements imposed by the TCPA and the Solicited Fax Rule have proved lucrative for class action plaintiffs and their counsel, but posed high financial risk for businesses engaged in direct advertising programs.  See, e.g., Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc., 2017 WL 2391751 at *1, n.1 (N.D. Ill. June 2, 2017) ("Teaming up with the Law Firm Anderson & Wanca, representing it here, the plaintiff has, in just the last four years, sued at least eighteen different companies in federal courts in Illinois, Indiana, Michigan, Missouri, California, Pennsylvania, New Jersey, Connecticut, Massachusetts, North Carolina, and Florida.  And that includes only those cases in which written opinions were published on Westlaw.  Counsel tells us plaintiff has brought more than twenty such cases altogether.").

In 2017, however, the legal landscape changed.
Significantly.  The Court of Appeals for the Eighth Circuit
described the historical and procedural background to that
change as follows:

> Petitioner Anda is a company that sells generic drugs.
> As part of its business, Anda faxes advertisements to
> small pharmacies.  Anda's fax advertisements convey
> pricing information and weekly specials to the
> pharmacies.  Many pharmacies have given permission to
> Anda for Anda to send those faxes.
>
> In 2010, Anda sought a declaratory ruling from the FCC
> clarifying that the [TCPA] does not require an opt-out
> notice on solicited fax advertisements - that is,
> those that are sent with the recipient's prior express
> permission.
>
> That issue was of great importance to Anda.  In 2008,
> Anda had been sued in a class action in Missouri state
> court for alleged violations of the FCC's Solicited
> Fax Rule.  Many of the plaintiff pharmacies in that
> case admitted that they had expressly given permission
> to Anda for Anda to send fax advertisements to the
> plaintiffs.  But those plaintiffs nevertheless sought
> over $150 million in damages from Anda because Anda's
> fax advertisements allegedly did not include opt-out
> notices that complied with the Solicited Fax Rule's
> requirements.
>
> Let that soak in for a minute: Anda was potentially on
> the hook for $150 million for failing to include opt-
> out notices on faxes that the recipients had given
> Anda permission to send.  If the Act actually provides
> the FCC with the authority to issue the Solicited Fax
> Rule, then Anda could be subject to that large class-
> action damage award.  But if the Act does not provide
> the FCC with the authority to issue the Solicited Fax
> Rule, then Anda would be off that hook.  Several other

businesses facing similar class-action lawsuits joined
Anda's petition to the FCC.

Bais Yaakov, 852 F.3d at 1080–81.


In response to the petitions filed by Anda and several

other business entities, the FCC "adhered to its interpretation

of the Act as providing the FCC with the authority to require

opt-out notices on solicited faxes as well as unsolicited

faxes." Id. at 1081. See generally Matter of Rules &

Regulations Implementing the Tel. Consumer Prot. Act of 1991,

Petitions for Declaratory Ruling, Waiver, and/or Rulemaking

Regarding the Commission's Opt-Out Requirement for Faxes Sent

with the Recipient's Prior Express Permission, 29 F.C.C. Rcd.

13998, 13998, 2014 WL 5493425 (2014).[3]  In response, several

parties filed "petitions for review" in various courts of

appeals, challenging the FCC's Solicited Fax Rule.  The

Multidistrict Litigation Panel then consolidated those petitions

and assigned them to the Court of Appeals for the District of

---

[3]    Ajit Pai - then a commissioner and now the Chairman of the
FCC - filed a dissenting opinion.  In it, he observed that, "the
question is which faxes must comply with the detailed opt-out
notice of section 227(b) and may be subject to private rights of
action.  The statute's unambiguous answer: only unsolicited
advertisements."  29 F.C.C. Rcd. at 14017.

Columbia Circuit. <u>See</u> 28 U.S.C. § 2112. <u>See also</u> 47 U.S.C. § 402(a); 28 U.S.C. § 2342(1).

The D.C. Circuit Court of Appeals reviewed the language of both the TCPA and the Solicited Fax Rule and concluded, not surprisingly, that the FCC exceeded the scope of its authority when it issued the rule.

> Although the Act requires an opt-out notice on unsolicited fax advertisements, the Act does not require a similar opt-out notice on <u>solicited</u> fax advertisements - that is, those fax advertisements sent with the recipient's prior express invitation or permission. Nor does the Act grant the FCC authority to require opt-out notices on solicited fax advertisements.
>
> The text of the Act provides a clear answer to the question presented in this case. Congress drew a line in the text of the statute between unsolicited fax advertisements and solicited fax advertisements. Unsolicited fax advertisements must include an opt-out notice. But the Act does not require (or give the FCC authority to require) opt-out notices on solicited fax advertisements. It is the Judiciary's job to respect the line drawn by Congress, not to redraw it as we might think best.
>
>                 * * *
>
> The FCC may only take action that Congress has <u>authorized</u>. Congress has not authorized the FCC to require opt-out notices on solicited fax advertisements. And that is all we need to know to resolve this case.

<u>Bais Yaakov</u>, 852 F.3d at 1082 (citation and footnote omitted) (emphasis in original). Accordingly, the court held that the

FCC's Solicited Fax Rule is "unlawful to the extent that it requires opt-out notices on solicited faxes," id. at 1083, and it vacated the FCC's 2014 order interpreting that rule.[4]

## II.   The Ruling in Bais Yaakov is Binding on this Court.

Recognizing that the holding in Bais Yaakov is not helpful to his case, Raitport argues that "this Court lacks the jurisdiction to follow the D.C. Circuit's decision [in Bais Yaakov] and must apply the opt-out regulation in this case which was promulgated by FCC pursuant to a 2006 FCC Order [i.e., the Solicited Fax Rule]." Plaintiff's Memorandum (document no. 98-1) at 3. According to Raitport, because the Hobbs Act vests exclusive jurisdiction to review FCC regulations in the courts of appeals, and because the Court of Appeals for the First Circuit has yet to consider the validity of the Solicited Fax Rule, this court lacks jurisdiction to do anything other than ignore the decision in Bais Yaakov and enforce the rule as written. See Plaintiff's Memorandum at 4 ("[U]ntil the First

---

[4]    Petitioners, who were represented by counsel that included Raitport's attorney in this proceeding, filed a writ of certiorari. 2017 WL 3977650. Interestingly, the FCC objected and urged the Supreme Court not to accept the appeal. 2018 WL 1182931. The Supreme Court denied certiorari. Bais Yaakov of Spring Valley v. FCC, 138 S. Ct. 1043 (Feb. 20, 2018). The administrative challenge to the Solicited Fax Rule was, therefore, complete. That, in turn, prompted Raitport to move this court to lift the stay in this case.

Circuit or the Supreme Court rules on the validity of the opt-out regulation, this Court is bound to apply it.").  The court disagrees.[5]

Most obviously, Raitport's construction of the Hobbs Act would lead to potentially absurd results - something Congress is presumed to seek to avoid - with the Solicited Fax Rule being enforceable in some jurisdictions, but unenforceable in others (most notably the D.C. Circuit and, perhaps, those circuits from which appeals were consolidated by the Multidistrict Litigation Panel in the D.C. Circuit).  Additionally, Raitport's view is inconsistent with the better-reasoned interpretations of the Hobbs Act and the scope of its jurisdiction-limiting provisions.

---

[5]     Raitport has sought leave to file supplemental briefing on this issue, but the court has determined such briefing is not necessary - particularly since none of the cases cited in his memorandum (which he proposes to more "fully brief") are on point.  The court's holding in this case is not, as Raitport suggests, "in essence a collateral attack" upon the FCC's Solicited Fax Rule.  Plaintiff's Memorandum (document no. 98-1) at 4 (citing Brotherhood of Locomotive Engineers v. B&M Corp., 788 F.2d 794, 801-02 (1st Cir. 1986)).  The Solicited Fax Rule was directly and properly challenged under the Hobbs Act and, in Bais Yaakov, the circuit court of appeals with jurisdiction over the matter held that the Rule is unlawful and invalid.  And, contrary to Raitport's assertion, the First Circuit's opinion in Brotherhood does not stand for the proposition that this court does "not have the jurisdiction to follow [the] D.C. Circuit's Hobbs Act ruling" in Bais Yaakov.  See Plaintiff's Memorandum (document no. 98-1) at 4.

For example, the Court of Appeals for the Sixth Circuit recently addressed a similar issue and held that the decision in Bais Yaakov rendered the Solicited Fax Rule invalid nationwide:

> Once the Multidistrict Litigation Panel assigned petitions challenging the Solicited Fax Rule to the D.C. Circuit, that court became "the sole forum for addressing . . . the validity of the FCC's rule[ ]." Peck v. Cingular Wireless, LLC, 535 F.3d 1053, 1057 (9th Cir. 2008) (quoting MCI Telecomms. Corp. v. U.S. West Comms., 204 F.3d 1262, 1267 (9th Cir. 2000)). And consequently, its decision striking down the Solicited Fax Rule became "binding outside of the [D.C. Circuit]." Id. This result makes sense in light of the procedural mechanism Congress has provided for challenging agency rules. See 28 U.S.C. §§ 2112, 2342–43. By requiring petitioners to first bring a direct challenge before the FCC, the statute allows this expert agency to weigh in on its own rules, and by consolidating petitions into a single circuit court, the statute promotes judicial efficiency and ensures uniformity nationwide. See CE Design, Ltd. v. Prism Bus. Media, Inc., 606 F.3d 443, 450 (7th Cir. 2010). Thus, . . . the Solicited Fax Rule is no longer valid.

Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc., 863 F.3d 460, 467 (6th Cir. 2017), as corrected on denial of reh'g en banc (Sept. 1, 2017).[6]

---

[6]   It is, perhaps, worth noting that the consolidation in the D.C. Circuit Court of Appeals of the numerous challenges to the Solicited Fax Rule was not a traditional referral from the Multidistrict Litigation Panel. Instead, the case was assigned to the D.C. Circuit Court of Appeals pursuant to authority vested in the MDL Panel by 28 U.S.C. § 2112(a)(3), which deals specifically with the review and enforcement of agency orders.

The Courts of Appeals for the Fourth and Ninth Circuits have similarly held that decisions resolving challenges to FCC regulations that have been consolidated in a single circuit court of appeals by the Multidistrict Litigation Panel are binding nationwide.  So, for example, the Court of Appeals for the Fourth Circuit has held:

> Various parties filed petitions for review of the FCC's First Report and Order (issuing the pricing rules) in several courts of appeals.  Pursuant to § 2112(a) the multidistrict litigation panel consolidated the petitions and assigned the matter by lottery to the Eighth Circuit.  See 28 U.S.C. § 2112(a)(3).  That circuit is now the sole forum for addressing challenges to the validity of the FCC's rules.  See id. § 2112(a)(5).  This consolidation procedure for review of agency orders is in place "to avoid confusion and duplication by the courts" and "to prevent unseemly conflicts that could result should sister circuits take the initiative and issue conflicting decisions."

GTE South, Inc. v. Morrison, 199 F.3d 733, 743 (4th Cir. 1999) (quoting Westinghouse Elec. Corp. v. NRC, 598 F.2d 759, 766–67 (3d Cir. 1979)).  See also US W. Commc'ns, Inc. v. Hamilton, 224 F.3d 1049, 1054 (9th Cir. 2000) ("The parties in this case did not file a Hobbs Act petition in this court.  Several parties in other cases did petition for review of the FCC's First Local Competition Order in other courts of appeals.  Pursuant to 28 U.S.C. § 2112(a), the multidistrict litigation panel consolidated these petitions and assigned them to the Eighth

Circuit.  As the Fourth Circuit recently explained [in GTE

South], that circuit is now the sole forum for addressing

challenges to the validity of the FCC's First Local Competition

Order."), as amended on denial of reh'g en banc (Oct. 23, 2000)

(citations and internal punctuation omitted).


More recently, the Court of Appeals for the Ninth Circuit

concluded:


> The Judicial Panel on Multidistrict Litigation
> consolidated challenges to the [FCC's] Second Report
> and Order in the Eleventh Circuit. . . . [T]he
> Eleventh Circuit's decision regarding the validity of
> the Second Report and Order is binding outside of the
> Eleventh Circuit.  Such a result is consistent with
> this and other Circuits' application of the Hobbs Act.
> [In a prior case], this court discussed the statutory
> framework for determining the validity of an FCC order
> and determined that together, 47 U.S.C. § 402(a) and
> 28 U.S.C. § 2342(1) vest the courts of appeals with
> exclusive jurisdiction to review the validity of FCC
> rulings.  In discussing the exclusivity of its
> jurisdiction, the D.C. Circuit wrote: "[W]ith regard
> to final FCC actions, a statute which vests
> jurisdiction in a particular court cuts off original
> jurisdiction in other courts in all cases covered by
> that statute."

Peck v. Cingular Wireless, LLC, 535 F.3d 1053, 1057 (9th Cir.

2008) (quoting Telecomms. Research & Action Ctr. v. FCC, 750

F.2d 70, 77 (D.C. Cir. 1984)).

Moreover, the court notes that other federal district courts (outside of the D.C. Circuit) have specifically held that the decision in <u>Bais Yaakov</u> is binding upon them.  <u>See</u> <u>A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.</u>, No. 16-C-2513, 2018 WL 488257 (N.D. Ill. Jan. 18, 2018); <u>Alpha Tech Pet, Inc. v. LaGasse, LLC</u>, No. 16-C-4321, 2017 WL 5069946 (N.D. Ill. Nov. 3, 2017); <u>Licari Family Chiropractic, Inc. v. Eclinical Works, LLC</u>, No. 8:16-CV-3461-MSS-JSS, 2018 WL 1449581 (M.D. Fla. Feb. 16, 2018).

This court joins those that have concluded that, upon consolidation in the D.C. Circuit by the Multidistrict Litigation Panel, that court of appeals became the sole forum for challenging the FCC's Solicited Fax Rule.  That court invalidated the Solicited Fax Rule, and its holding is binding upon this court.  <u>See, e.g.</u>, <u>Peck</u>, 535 F.3d at 1057 ("The Hobbs Act provides a framework for determining the validity of final FCC orders, a framework that grants exclusive jurisdiction to the circuit courts.  While the district court may not have agreed with the Eleventh Circuit's analysis in <u>NASUCA</u>, according to the framework for reviewing an FCC decision, <u>the district court was bound by the NASUCA court's determination</u> that the [FCC's] Order was invalid.") (emphasis supplied).  Raitport's assertion that this court is bound to apply the invalidated

Solicited Fax Rule unless and until it is also invalidated by either the Court of Appeals for the First Circuit (by way of an administrative appeal, pursuant to 28 U.S.C. § 2344), or the Supreme Court of the United States, is without legal merit.

III.  <u>The Two Subclasses Proposed by Raitport Cannot Be Certified</u>.

To obtain class certification, a party must satisfy the four threshold requirements of Federal Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation), as well as the requirements of either Rule 23(b)(1), (2), or (3). Here, Raitport alleges that all the requirements of Rule 23(a) are met, as are those of Rule 23(b)(3) (that is, that a class action is superior to other methods of resolving this controversy).  The court disagrees.

As noted above, Raitport seeks certification of a class and two subclasses, defined as follows:

> **Class A:** All persons from August 1, 2006 through the present, to whom Defendant transmitted or caused to be transmitted a facsimile advertisement, advertising the commercial availability or quality of any property, goods, or services of Defendant, which contained an opt-out notice substantially similar or identical to that contained on the facsimile advertisements attached hereto as Exhibits A and B, using a telephone facsimile machine, computer, or other device.

> **Subclass 1:** All persons to whom Defendant
> transmitted or caused to be transmitted the
> facsimile advertisement attached hereto as
> Exhibit A, on or about October 4, 2006, using a
> telephone facsimile machine, computer, or other
> device.
>
> **Subclass 2:** All persons to whom Defendant
> transmitted or caused to be transmitted the
> facsimile advertisement attached hereto as
> Exhibit B, on or about November 7, 2006, using a
> telephone facsimile machine, computer, or other
> device.

Motion for Class Certification (document no. 42) at 2.

Importantly, as Raitport himself acknowledges, "The Class and

Subclasses are not defined on the basis of whether or not

Harbour had been provided with express invitation or permission

to send the faxes initially or whether there was an existing

business relationship between the parties."  Memorandum in

Support of Motion for Class Certification (document no. 42-1) at

8.  Instead, the class and subclasses are "defined on the basis

of the contents of the opt-out notice contained in the facsimile

advertisements Harbour sent."  Id.  But, because Harbour Capital

was not obligated to include any opt-out notice on solicited

faxes, the subclasses proposed by Raitport are over-inclusive

and unwieldy.

The problem with class certification in this case is virtually identical to that presented in Sandusky, in which the Court of Appeals for the Sixth Circuit reasoned as follows:

> Here, if [plaintiff's] 40,343-member class were certified, the district court would be tasked with filtering out those members to whom [defendant] was not liable — those individuals who solicited the Prolia fax.  Regardless of other questions that may be common to the class, identifying which individuals consented would undoubtedly be the driver of the litigation.  In other words, one substantive issue undoubtedly will determine how a trial on the merits will be conducted if the proposed class is certified.  This issue is whether [defendant's] fax advertisements were transmitted without the prior express invitation or permission of each recipient.  Thus, the predominant issue of fact is undoubtedly one of individual consent.

Sandusky Wellness Ctr., 863 F.3d at 468 (citations and internal punctuation omitted) (emphasis in original).  The same would be true here if the court were to certify Raitport's two subclasses consisting of nearly 30,000 recipients of solicited and (allegedly) unsolicited fax advertisements from Harbour Capital.

Several other courts have employed reasoning similar to the Sixth Circuit's and denied class certification in cases involving allegedly defective opt-out notices and arising under the TCPA.  See, e.g., Alpha Tech Pet, Inc. v. LaGasse, LLC, No. 16 C 4321, 2017 WL 5069946, at *1 (N.D. Ill. Nov. 3, 2017) ("Since Bais Yaakov was decided earlier this year, several

courts have found class certification inappropriate in TCPA cases where, to determine whether any putative member of the proposed class had a TCPA claim, the Court would first be required to determine whether that proposed class member 'solicited' the faxes it received.  This Court likewise finds Bais Yaakov binding and the individualized consent issues created by Bais Yaakov dispositive of plaintiffs' class certification claims.  The Court therefore grants defendants' motion to deny class certification.") (citations and internal punctuation omitted); Brodsky v. HumanaDental Ins. Co., 269 F. Supp. 3d 841, 851 (N.D. Ill. 2017) ("Plaintiff claims that Defendant's faxes did not comply with the TCPA's opt-out notice requirement.  The TCPA, however, does not impose an opt-out notice requirement on 'solicited' faxes.  That obligation was created by the Solicited Fax Rule, which is no longer operable here. . . .  Thus, to determine whether any putative member of the proposed class had a TCPA claim, the Court would first be required to determine whether that proposed class member 'solicited' the faxes it received.  In light of controlling precedent (which explains that this inquiry is context-dependent) and the facts here (which reflect different relationships among and between various recipients), the Court holds that individual consent issues defeat predominance and superiority, such that class treatment is no longer warranted

under Rule 23."); Licari Family Chiropractic, Inc. v. Eclinical Works, LLC, No. 8:16-CV-3461-MSS-JSS, 2018 WL 1449581 (M.D. Fla. Feb. 16, 2018) ("Based on Bais Yaakov, therefore, Plaintiffs' asserted basis for class certification, namely, that the Fax's opt-out notice was defective irrespective of whether the Fax was solicited by the recipient, is no longer valid. Assuming that the opt-out notice is defective, it is defective only as to those recipients that did not solicit the Fax. As to those who solicited the Fax, the opt-out notice is not defective as no opt-out notice was required. Plaintiffs' proposed class definition is thereby overbroad in that it does not exclude individuals who solicited the Fax."); Simon v. Healthways, Inc., No. CV1408022BROJCX, 2015 WL 10015953, at *8 (C.D. Cal. Dec. 17, 2015) ("The Court cannot and will not engage in hundreds of mini-trials to determine whether a putative class member provided Defendants his or her or its prior express permission [to send the fax advertisement]. Accordingly, the Court finds that class action is not superior to individual suits as a means to adjudicate this dispute; putative class members may seek recovery in small claims court."). See also Gene & Gene LLC v. BioPay LLC, 541 F.3d 318, 329 (5th Cir. 2008) ("Thus, the determinative question of whether consent [to receive the faxes] can be established via class-wide proof must, given the particular facts of this case, be answered in the negative.

[Plaintiff] has failed to advance a viable theory of generalized proof to identify those persons, if any, to whom [defendant] may be liable under the TCPA.  Indeed, neither [plaintiff] nor the district court explain how the course of conduct they reference would be of particular relevance at trial.  This prevents the purported class from having the required cohesiveness and defeats the predominance requirement.").

So it is in this case.  Under the circumstances presented, Raitport has not shown that the proposed class action is superior to other available means by which to resolve this controversy, or that questions of law common to class members predominate over questions affecting only individual members. See Fed. R. Civ. P. 23(b)(3).  Nor has Raitport demonstrated that Rule 23(a)'s commonality and typicality requirements are met.

IV.  <u>Raitport's Motion to Add a Third Subclass is Denied</u>.

Finally, Raitport seeks leave of the court to amend his motion for class certification to add a third subclass - that is, "a subclass of persons who did not provide Defendant prior express consent to being sent fax advertisements."  Memorandum in Support of Motion to Lift Stay (document no. 98-1) at 5. That motion is denied.

The faxes at issue in this case were sent more than a decade ago (in the summer and fall of 2006). And, it is undisputed that the agent Harbour Capital employed to send those faxes did not maintain a log of which specific customers actually received a fax from Harbour Capital.

> Westfax [Harbour Capital's agent] does not keep
> records regarding what specific customers actually
> received a fax. Rather, Westfax keeps records
> regarding the number of transmittals that received a
> tone from the intended recipient's fax machine.
> However, this does not necessarily indicate how may
> faxes were actually printed by the intended fax
> machines. Accordingly, there is no record of which
> customers received faxes as a result of specific fax
> campaigns.

Defendant's Memorandum (document no. 46-1) at 4 (citations omitted). That means that of the 29,720 potential members of the additional subclass proposed by Raitport, each would have to be asked whether he or she remembers receiving a fax advertisement from Harbour Capital nearly 12 years ago and, if so, whether he or she recalls giving Harbour Capital permission to send that fax. That presents an individualized factual issue substantial enough to preclude class certification of even Raitport's proposed amended class.

It is well-understood that for a court to certify a class action, the class must be "sufficiently defined," meaning, in

this circuit, that "the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." Matamoros v. Starbucks Corp., 699 F.3d 129, 139 (1st Cir. 2012)(quoting James Wm. Moore et al., Moore's Federal Practice § 23.21[3][a] (3d ed. 2012)). This is generally referred to as the "ascertainability" requirement. See, e.g., Brecher v. Republic of Argentina, 806 F.3d 22, 24 (2d Cir. 2015)([T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.) (citation omitted). Here, as in Sandusky, individualized questions concerning which of nearly 30,000 potential recipients actually received a particular unsolicited fax from Harbour Capital more than a decade ago render Raitport's proposed class unascertainable and the potential reliance upon individual affidavits unreliable.

> In addition to issues surrounding consent, the
> district court premised its denial of certification on
> the inability to identify class members. In its view,
> this difficulty was a problem for [plaintiff] under
> both Rule 23(b)(3) predominance and ascertainability.
> [Plaintiff's] proposed class consisted of "[a]ll
> persons who were successfully sent [the Prolia fax]."
> But while [defendant] intended the fax to be sent to
> all 53,502 individuals and entities on the Prolia
> List, only 40,343 actually received it. Both parties
> agreed that the 25% who did not receive the Prolia fax
> are not valid class members. In the absence of fax

<u>logs listing the status of each attempted transmission</u>, the district court resolved that each potential class member would have to submit an affidavit certifying receipt of the Prolia fax. Given that the fax was sent in 2010, the recollection of a putative class member that he, she, or it had received a particular unsolicited fax would be somewhat suspect. Thus, it concluded that using affidavits to identify class members was yet a second individual issue that prevented common questions from predominating, and reliance on these 7-year-old, self-serving statements was not an "administratively feasible" way to ascertain class membership.

<u>Sandusky Wellness Ctr.</u>, 863 F.3d at 470 (emphasis supplied).

See also <u>Leyse v. Lifetime Entm't Servs., LLC</u>, 679 F. App'x 44, 47 (2d Cir. 2017) (affirming district court's denial of class certification "because (1) no list of the called numbers existed; (2) no such list was likely to emerge; and (3) (as further explained in the order denying reconsideration) proposed class members could not realistically be expected to recall a brief phone call received six years ago or to retain any concrete documentation of such receipt.") (citations and internal punctuation omitted).

### Conclusion

When, pursuant to 28 U.S.C. § 2112, the Multidistrict Litigation Panel consolidated the multiple challenges to the FCC's Solicited Fax Rule in the D.C. Circuit Court of Appeals, that court became the sole forum for addressing the validity of

that rule.  It's holding that the Solicited Fax Rule is unlawful is binding upon this court (and, indeed, across the nation, unless and until the Supreme Court holds otherwise - something which, at least in this case, it has declined to do). Raitport's suggestion to the contrary is unavailing and it is undermined by substantial persuasive precedent to the contrary.

Because the Solicited Fax Rule is inapplicable, Harbour Capital was only required to include opt-out language on fax advertisements that were "unsolicited."  Faxes that were sent by Harbour Capital to recipients who gave their permission were not required to bear the opt-out language.  The fact that Raitport's original proposed class and two subclasses fail to distinguish between those recipients who gave such permission and those who did not, renders those proposed classes unascertainable. Additionally, that precludes common questions of fact from predominating.

Finally, there are similar problems with Raitport's proposal to amend his motion for class certification to add a third subclass.  Given the passage of nearly a dozen years since the subject faxes were sent, and in light of the fact that no records exist as to which intended recipients of those faxes

actually received them, such a subclass would be unascertainable and would not meet the requirements of Rule 23.

For the foregoing reasons, Raitport's Motion to Lift Stay (document no. 98) is granted in part and denied in part. It is granted to the extent that the stay previously entered by the court is hereby lifted. It is denied to the extent that Raitport seeks leave to submit additional briefing. It is also denied to the extent Raitport seeks leave to amend his motion for class certification to add a third subclass.

Finally, Raitport's Motion for Class Certification (document no. 42) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 11, 2018

cc: Aytan Y. Bellin, Esq.
    Michael J. Sheehan, Esq.
    William E. Christie, Esq.